# UNITED STATES OF AMERICA
## MERIT SYSTEMS PROTECTION BOARD

SUZANNE MACMULLIN,
              Appellant,

      v.

DEPARTMENT OF HOMELAND
    SECURITY,
              Agency.

DOCKET NUMBER
PH-0842-21-0140-I-2

DATE: December 6, 2022

# THIS FINAL ORDER IS NONPRECEDENTIAL[1]

<u>Lawrence Berger</u>, Esquire, Glen Cove, New York, for the appellant.

<u>David M. Burns</u>, Esquire and <u>Sarah L. Montgomery</u>, Esquire, Washington, D.C., for the agency.

## BEFORE

Cathy A. Harris, Vice Chairman
Raymond A. Limon, Member
Tristan L. Leavitt, Member

## FINAL ORDER

¶1       The appellant has filed a petition for review of the initial decision, which affirmed the agency's decision denying her application for Federal Employees' Retirement System (FERS) law enforcement officer (LEO) retirement credit. For

---

[1] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law. Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions. In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law. *See* 5 C.F.R. § 1201.117(c).

the reasons discussed below, we GRANT the appellant's petition for review and REVERSE the initial decision. The appellant's application for LEO retirement credit is GRANTED.

## BACKGROUND

¶2      The appellant worked in various law enforcement positions within the Department of the Interior from September 17, 1995, through January 7, 2006. *MacMullin v. Department of Homeland Security*, MSPB Docket No. PH-0842-21-0141-I-1, Initial Appeal File (IAF), Tab 8 at 13-18. On January 8, 2006, she transferred directly from one of these positions to a Supervisory Physical Security Specialist position within the Department of Homeland Security, the respondent agency in this appeal. *Id.* at 114. During her tenure in that position, the agency "corrected" the appellant's retirement plan code several times, switching it back and forth between LEO-covered and non-LEO-covered, until finally settling on LEO coverage. *Id.* at 9, 27-35. On September 28, 2008, the appellant was promoted to the position of Supervisory Criminal Investigator, which the agency also coded for LEO coverage. *Id.* at 54-55. Thereafter, the agency maintained records indicating that the appellant had been earning LEO retirement credit throughout this entire period, and it continued deducting retirement contributions at the LEO rate. IAF, Tab 8 at 60, Tab 13 at 19-21, 71.

¶3      In June 2017, incidental to a retirement estimate request, the agency took note of the multiple "corrections" that it had previously made to the appellant's retirement coverage code while she was serving as a Physical Security Specialist. IAF, Tab 8 at 57-59. The agency then embarked upon an extensive review of the appellant's employment history to determine whether there were any errors in her retirement coverage. *Id.* at 57. On April 30, 2020, the agency notified the appellant that her Physical Security Specialist position had not been approved for LEO coverage, and because of this break in LEO-covered service, she also did not meet the conditions of secondary LEO coverage for her service as a Supervisory

Criminal Investigator. *Id.* at 60-61. Thus, the appellant was informed for the first time that none of her previous 14 years of service were creditable towards an LEO retirement. The agency notified the appellant of her right to seek a determination of coverage under 5 C.F.R. § 842.804(c). *Id.* at 60-61. The appellant submitted a request for rigorous LEO coverage, and on February 4, 2021, the agency denied the request.[2] *Id.* at 11-134.

¶4      The appellant filed a Board appeal. IAF, Tab 1. After a hearing, the administrative judge issued an initial decision affirming the agency's decision. *MacMullin v. Department of Homeland Security*, MSPB Docket No. PH-0842-21-0140-I-2, Appeal File, Tab 12, Initial Decision (ID). Considering the appellant's position description and testimony regarding her day-to-day duties, the administrative judge found "less than preponderant evidence that the purpose of the subject position was law enforcement." ID at 2-6, 8-9.

¶5      The appellant has filed a petition for review, disputing the administrative judge's analysis. Petition for Review (PFR) File, Tab 5. The agency has responded to the petition for review, and the appellant has filed a reply to the agency's response. PFR File Tabs 7-8.

## ANALYSIS

¶6      Under 5 U.S.C. § 8412(d), an employee covered under FERS may retire at age 50 after completing 20 years of LEO service, or at any age after completing 25 years of LEO service. For purposes of FERS retirement coverage, there are two types of LEO positions—rigorous and secondary. 5 C.F.R. § 842.803(a)-(b). Apart from details and temporary promotions, all service in a rigorous LEO position is covered under 5 U.S.C. § 8412(d). 5 C.F.R. § 842.803(a)(1)-(2). Service in a secondary LEO position is covered if the employee moves directly

---

[2] The agency denied the request on both timeliness and substantive grounds. IAF, Tab 8 at 123-34. The parties briefed the timeliness issue before the Board, and the administrative judge ruled that the appellant's request was timely. IAF, Tabs 12-15. We agree with the administrative judge's ruling, which the agency has not contested.

from a rigorous position to a secondary position, the employee has completed 3 years of service in a rigorous position, and the employee has been continuously employed in a secondary position without a break in service exceeding 3 days. 5 C.F.R. § 842.803(b). The issue in this appeal is whether the appellant met the conditions for coverage in a rigorous LEO position during her employment as a Supervisory Physical Security Specialist from January 8, 2006, through September 27, 2008.[3]

¶7        An employee can qualify for LEO retirement credit in a rigorous position either by serving in a position that has been approved as such, or by applying for LEO credit and satisfying the employing agency that she is entitled to LEO retirement credit because her actual duties primarily involve pursuing or detaining criminals. *Watson v. Department of the Navy*, 262 F.3d 1292, 1296 (2001); *Bingaman v. Department of the Treasury*, 127 F.3d 1431, 1434 (Fed. Cir.

---

[3] For reasons that are unclear, the appellant never attempted to claim secondary coverage for her service as a Supervisory Physical Security Specialist (although the agency's decision denied both rigorous and secondary coverage). The record was never developed on this issue, and it was not addressed in the initial decision. Based on the record before us, it seems highly likely that the appellant's service in this position satisfied the conditions for secondary coverage set forth in 5 C.F.R. § 842.803(b)(1). Nevertheless, because we find that the appellant's service in this position qualified for coverage under 5 C.F.R. § 842.803(a), as service in a rigorous position, it is unnecessary for us to remand the appeal for adjudication of the secondary coverage issue.

Similarly, there is an unresolved issue of fact as to whether the agency head previously made a determination, in accordance with 5 U.S.C. § 842.803(a), .804(a), and .808(a), that Supervisory Physical Security Specialist was a rigorous or secondary LEO position. IAF, Tab 8 at 28-29, Tab 13 at 10. If that were the case, there is a serious question as to whether the agency had the authority to revoke that determination retroactively 14 years later. An agency is authorized to retroactively designate a position as LEO covered, but it does not appear that an agency is authorized to retroactively revoke such coverage. *See* Office of Personnel Management, CSRS and FERS Handbook, *Special Retirement Provisions for Law Enforcement Officers, Firefighters, Air Traffic Controllers, and Military Reserve Technicians*, ch. 46, §§ 46A3.2-6, 46B3.2-3 (April 1998), https://www.opm.gov/retirement-services/publications-forms/csrsfers-handbook/c046.pdf. We likewise decline to decide this issue because the appellant is prevailing on other grounds.

1997); *see* 5 C.F.R. § 842.803(a), .804. To prove entitlement to service credit for the relevant period, the appellant must establish that she occupied a "rigorous position whose primary duties [were] the investigation, apprehension, or detention of individuals suspected or convicted of offenses against the criminal laws of the United States, or the protection of officials of the United States against threats to personal safety." 5 C.F.R. § 842.802. Employees "whose primary duties involve maintaining order, protecting life and property, guarding against or inspecting for violations of law, or investigating persons other than those who are suspected or convicted of offenses against the criminal laws of the United States" are not entitled to rigorous LEO credit. *Id.*

¶8        During the pendency of the petition for review, the United States Court of Appeals for the Federal Circuit issued a precedential decision directly addressing the issues in this appeal. *Klipp v. Department of Homeland Security*, 34 F.4th 1326 (Fed. Cir. 2022). In particular, the court emphasized that "the Board must make two independent findings: the first must be based on the position description evidence alone, and if that finding is adverse to the employee, the second must be based solely on evidence of his or her actual duties." *Id.* at 1333. In this case, the administrative judge did not make these two independent findings. Instead, she essentially weighed the appellant's position description against her day-to-day job duties, and concluded that the Supervisory Physical Security Specialist position was not created for the purpose of law enforcement. ID at 8-9. This analysis is not consistent with the court's holding in *Klipp*. Nevertheless, because that the record is fully developed on the relevant issues, the Board will apply the two-part analysis on review. *See Vitale v. Department of Veterans Affairs*, 107 M.S.P.R. 501, ¶ 16 (2007) (addressing the jurisdictional issue for the first time on petition for review where the record on jurisdiction was fully developed).

¶9        Considering the position description itself, we find that it does not denote that Supervisory Physical Security Specialist is a rigorous LEO position. IAF,

Tab 8 at 194-99. The summary description of the position indicates that the incumbent is responsible "for the planning, operation and leadership of assigned security and enforcement activities," and "serves as primary advisor to the District Director regarding physical security, crime prevention and law enforcement operations for an assigned geographic area." *Id.* at 195. It does not mention investigation, apprehension, or detention of individuals or the protection of officials of the United States. The long list of "major duties" that follows covers duties associated with advising the Director, monitoring the effectiveness of personnel, conducting security assessments, acting as a liaison between the agency and various third parties, data collection and analysis, and work planning. *Id.* at 196-97. The last category of "major duties" concerns "duties as a law enforcement official," performed "[o]n a recurring basis." *Id.* at 197. The position description provides that the incumbent is authorized to carry a firearm and make arrests, but it goes on to say that this law enforcement work concerns the protection of life, property, and the rights of individual citizens, as well as enforcement of compliance with laws and regulations. *Id.* This type of work does not qualify as LEO work under 5 C.F.R. § 842.802. The position description ends by stating that the incumbent "arrests offenders and provides police assistance during emergency and/or life threatening situations," which does qualify as rigorous LEO work, *see* 5 C.F.R. § 842.802, but in the context of the position description as a whole, such work does not appear to constitute a Supervisory Physical Security Specialist's primary duties, IAF, Tab 8 at 198. Furthermore, although the position description refers to "medical testing requirements," these requirements are not specified, and there are no provisions for maximum entry or minimum retirement ages. *Id.* at 199. For these reasons, we find that the position description does not describe a LEO position as defined in 5 U.S.C. § 8401(17). Rather, we find that the position description is akin to the one at issue in *Watson*, 262 F.3d at 1303-04, which the court found did not

primarily consist of the investigation, apprehension or detention of criminals or suspected criminals.

¶10     Turning to the second inquiry, we find that evidence of the appellant's actual job duties is sufficient to establish that her service as a Supervisory Physical Security Specialist was creditable as service in a rigorous LEO position. Physical vigorousness and hazardousness are the major factors to be considered in determining a Federal employee's LEO status based on actual duties. *Klipp*, 34 F.4th at 1332; *Crowley v. United States*, 398 F.3d 1329, 1338-39 (Fed. Cir. 2005). "Physical vigorousness," is the first and predominate factor. *Crowley*, 398 F.3d at 1339. "The relevant considerations in any vigorousness determination are whether or not the position brings with it (in order of importance): 1) strenuous physical fitness requirements; 2) age requirements (such as a mandatory retirement age or a maximum entry age); or 3) a requirement that an employee be on call twenty four hours a day." *Id*. As to the first subfactor, the record in this case shows that the appellant's position had strenuous physical fitness requirements. Prior to her appointment, the appellant was required to take and pass a demanding physical fitness examination that included a 1.5 mile run, agility, bench press, body composition, and flexibility requirements. Hearing Transcript (Tr.) at 29-30 (testimony of the appellant). Furthermore, during her entire tenure in this position, the appellant was required to participate quarterly in a rigorous defensive tactics course that included handcuffing and ground fighting, and she employed these skills frequently in the execution of her job duties. Tr. at 21-22, 31, 33-34 (testimony of the appellant), 123 (testimony of the Regional Director). The agency also afforded the appellant 3 hours every week of on-duty "fitness time" during which she was encouraged to go to the gym and maintain her physical conditioning. Tr. at 31 (testimony of the appellant). Regarding the second subfactor, it is undisputed that there was no maximum entry or minimum retirement age for Supervisory Physical Security Specialists. Tr. at 81-83 (testimony of the appellant). Regarding the third

subfactor, it is also undisputed that the appellant was on call 24 hours per day. Tr. at 18-19 (testimony of the appellant). Considering these three subfactors together and assigning them weight in accordance with their importance, we find that the physical vigorousness factor is satisfied. We therefore move on to the hazardousness factor. *See Crowley*, 398 F.3d at 1339.

¶11 To determine hazardousness, the Board will "consider whether the position (in order of importance): requires frequent and consistent contact with criminal suspects on the part of the employee (including interrogation of suspects and pursuit or detention of criminals); or authorizes the employee to carry a firearm." *Crowley*, 398 F.3d at 1339. The record in this appeal shows that both of these subfactors are satisfied. First, the appellant estimated that, during the 33 months that she served as a Supervisory Physical Security Specialist, she made on average 1 or 2 arrests per month, for a total of approximately 40 or 50 arrests. Tr. at 15-16 (testimony of the appellant). She also testified that, apart from individuals whom she actually arrested, she had contact with criminal suspects multiple times per week, and that this was a "constant" part of her job. Tr. at 17 (testimony of the appellant). The appellant's testimony in this regard is not in dispute. Nor is it disputed that the appellant was authorized to carry a firearm. Tr. at 19 (testimony of the appellant). In fact, firearms qualification was a part of the quarterly defensive tactics course discussed above. Tr. at 32-33 (testimony of the appellant). In any event, the administrative judge credited the appellant's testimony that she spent at least half of her working time, about 60%, pursuing criminal investigations. ID at 5-6; Tr. at 24 (testimony of the appellant), 122-23 (testimony of the Regional Director). We therefore find that the appellant's job duties satisfy the hazardousness factor as well. *See Klipp*, 34 F.4th at 1333 (explaining that, under Federal Circuit precedent, an individual who is authorized to carry a firearm and spends 50% or more of her time pursuing criminal investigations likely satisfies the hazardousness requirement).

¶12      The administrative judge acknowledged that the appellant regularly performed rigorous LEO duties during the course of her employment as a Supervisory Physical Security Specialist. However, she found that this was not a function of the appellant's position as set forth in the position description and was instead an unintended consequence attributable to the unavailability of Special Agents to perform rigorous LEO work in her area. ID at 8-9. However, this situation, where the employee's actual experience of the job differs substantially from the official position description, is exactly what the two-part inquiry was meant to address. *See Klipp*, 34 F. 4th at 1332; *Crowley*, 398 F.3d at 1340. By considering evidence of the position description and the appellant's actual job duties together rather than separately, the administrative judge did not reach the central issue of whether, in the real world, the service that the appellant actually rendered as a Supervisory Physical Security Specialist consisted primarily of rigorous LEO duties. For the reasons explained above, in our application of the two-step analysis, we conclude that it did.

## ORDER

¶13      We ORDER the agency to grant the appellant the appropriate amount of LEO retirement credit. The agency must complete this action no later than 20 days after the date of this decision. In connection with these awards, the appellant is ORDERED to make appropriate arrangements with the agency to deposit into the Civil Service Retirement and Disability Fund an amount to cover the higher withholding rate that applies to LEO positions.

¶14      We also ORDER the agency to tell the appellant promptly in writing when it believes it has fully carried out the Board's Order and of the actions it has taken to carry out the Board's Order. The appellant, if not notified, should ask the agency about its progress. *See* 5 C.F.R. § 1201.181(b).

¶15      No later than 30 days after the agency tells the appellant that it has fully carried out the Board's Order, the appellant may file a petition for enforcement

with the office that issued the initial decision on this appeal if the appellant believes that the agency did not fully carry out the Board's Order. The petition should contain specific reasons why the appellant believes that the agency has not fully carried out the Board's Order, and should include the dates and results of any communications with the agency. 5 C.F.R. § 1201.182(a).

## NOTICE TO THE APPELLANT REGARDING
## YOUR RIGHT TO REQUEST
## ATTORNEY FEES AND COSTS

You may be entitled to be paid by the agency for your reasonable attorney fees and costs. To be paid, you must meet the requirements set forth at Title 5 of the United States Code (5 U.S.C.), sections 7701(g), 1221(g), or 1214(g). The regulations may be found at 5 C.F.R. §§ 1201.201, 1201.202, and 1201.203. If you believe you meet these requirements, you must file a motion for attorney fees and costs WITHIN 60 CALENDAR DAYS OF THE DATE OF THIS DECISION. You must file your motion for attorney fees and costs with the office that issued the initial decision on your appeal.

## NOTICE OF APPEAL RIGHTS[4]

You may obtain review of this final decision. 5 U.S.C. § 7703(a)(1). By statute, the nature of your claims determines the time limit for seeking such review and the appropriate forum with which to file. 5 U.S.C. § 7703(b). Although we offer the following summary of available appeal rights, the Merit Systems Protection Board does not provide legal advice on which option is most appropriate for your situation and the rights described below do not represent a statement of how courts will rule regarding which cases fall within their jurisdiction. If you wish to seek review of this final decision, you should immediately review the law applicable to your claims and carefully follow all

---

[4] Since the issuance of the initial decision in this matter, the Board may have updated the notice of review rights included in final decisions. As indicated in the notice, the Board cannot advise which option is most appropriate in any matter.

filing time limits and requirements. Failure to file within the applicable time limit may result in the dismissal of your case by your chosen forum.

Please read carefully each of the three main possible choices of review below to decide which one applies to your particular case. If you have questions about whether a particular forum is the appropriate one to review your case, you should contact that forum for more information.

**(1) <u>Judicial review in general</u>**. As a general rule, an appellant seeking judicial review of a final Board order must file a petition for review with the U.S. Court of Appeals for the Federal Circuit, which must be <u>received</u> by the court within **60 calendar days** of <u>the date of issuance</u> of this decision. 5 U.S.C. § 7703(b)(1)(A).

If you submit a petition for review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

> U.S. Court of Appeals
> for the Federal Circuit
> 717 Madison Place, N.W.
> Washington, D.C. 20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov. Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit. The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

(2) **Judicial or EEOC review of cases involving a claim of discrimination**.  This option applies to you only if you have claimed that you were affected by an action that is appealable to the Board and that such action was based, in whole or in part, on unlawful discrimination.  If so, you may obtain judicial review of this decision—including a disposition of your discrimination claims—by filing a civil action with an appropriate U.S. district court (*not* the U.S. Court of Appeals for the Federal Circuit), within **30 calendar days** after you receive this decision.  5 U.S.C. § 7703(b)(2); *see Perry v. Merit Systems Protection Board*, 582 U.S. ____ , 137 S. Ct. 1975 (2017).  If you have a representative in this case, and your representative receives this decision before you do, then you must file with the district court no later than **30 calendar days** after your representative receives this decision.  If the action involves a claim of discrimination based on race, color, religion, sex, national origin, or a disabling condition, you may be entitled to representation by a court-appointed lawyer and to waiver of any requirement of prepayment of fees, costs, or other security.  *See* 42 U.S.C. § 2000e-5(f) and 29 U.S.C. § 794a.

Contact information for U.S. district courts can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

Alternatively, you may request review by the Equal Employment Opportunity Commission (EEOC) of your discrimination claims only, excluding all other issues.  5 U.S.C. § 7702(b)(1).  You must file any such request with the EEOC's Office of Federal Operations within **30 calendar days** after you receive this decision.  5 U.S.C. § 7702(b)(1).  If you have a representative in this case, and your representative receives this decision before you do, then you must file with the EEOC no later than **30 calendar days** after your representative receives this decision.

If you submit a request for review to the EEOC by regular U.S. mail, the address of the EEOC is:

Office of Federal Operations
Equal Employment Opportunity Commission
P.O. Box 77960
Washington, D.C.  20013

If you submit a request for review to the EEOC via commercial delivery or by a method requiring a signature, it must be addressed to:

Office of Federal Operations
Equal Employment Opportunity Commission
131 M Street, N.E.
Suite 5SW12G
Washington, D.C.  20507

**(3) Judicial review pursuant to the Whistleblower Protection Enhancement Act of 2012**.  This option applies to you only if you have raised claims of reprisal for whistleblowing disclosures under 5 U.S.C. § 2302(b)(8) or other protected activities listed in 5 U.S.C. § 2302(b)(9)(A)(i), (B), (C), or (D). If so, and your judicial petition for review "raises no challenge to the Board's disposition of allegations of a prohibited personnel practice described in section 2302(b) other than practices described in section 2302(b)(8), or 2302(b)(9)(A)(i), (B), (C), or (D)," then you may file a petition for judicial review either with the U.S. Court of Appeals for the Federal Circuit or any court of appeals of competent jurisdiction.[5]  The court of appeals must receive your petition for review within **60 days** of the date of issuance of this decision. 5 U.S.C. § 7703(b)(1)(B).

---

[5] The original statutory provision that provided for judicial review of certain whistleblower claims by any court of appeals of competent jurisdiction expired on December 27, 2017.  The All Circuit Review Act, signed into law by the President on July 7, 2018, permanently allows appellants to file petitions for judicial review of MSPB decisions in certain whistleblower reprisal cases with the U.S. Court of Appeals for the Federal Circuit or any other circuit court of appeals of competent jurisdiction. The All Circuit Review Act is retroactive to November 26, 2017. Pub. L. No. 115-195, 132 Stat. 1510.

If you submit a petition for judicial review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

U.S. Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, D.C.  20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov.  Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit.  The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

Contact information for the courts of appeals can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

FOR THE BOARD:                              /s/ for

Jennifer Everling
Acting Clerk of the Board

Washington, D.C.